IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**CLAUDIA MOSQUEDA,**

      **Plaintiff,**

**v.**                                                      **No. CIV-13-0485 LAM**

**CAROLYN W. COLVIN, Acting Commissioner**
**of the Social Security Administration,**

      **Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 24)*, filed December 13, 2013. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 26* and *27*]. On February 11, 2014, Defendant filed a response to the motion [*Doc. 29*], and, on February 25, 2014, Plaintiff filed a reply [*Doc. 30*]. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Doc. 14*]. For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I.   Procedural History

On April 17, 2009, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI"), respectively, alleging that she became disabled on April 25, 2007.  [*Doc. 14-7* at 4-8 and 12-14, respectively].  Plaintiff stated that she became disabled due to: "Chronic heart failure/tire easily/shortness [of] breath/hpb/fatigue/hands get numb."  [*Doc. 14-8* at 3].  The applications were respectively denied at the initial level on June 22, 2009 (*Doc. 14-5* at 2-5 and 6-9), and at the reconsideration level on July 22, 2010 (*id.* at 13-15 and 16-18).  Pursuant to Plaintiff's request (*id.* at 22-23), Administrative Law Judge David R. Wurm (hereinafter "ALJ") conducted a hearing on July 12, 2011.  [*Doc. 14-3* at 27-50].  At the hearing, Plaintiff was present, was represented by counsel and testified.  *Id.* at 29, 34-43 and 49-50.  A Medical Expert (hereinafter "ME") was present and testified (*id.* at 29 and 31-34), and a Vocational Expert (hereinafter "VE") was also present and testified (*id.* at 29 and 43-49).

On September 14, 2011, the ALJ issued his decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 14-3* at 15-26].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 10-11), and, on March 20, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 4-9), which made the ALJ's decision the final decision of the Commissioner.  On May 24, 2013, Plaintiff filed his complaint in this case.  [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.

*Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on June 18, 1977. [*Doc. 14-7* at 4]. Plaintiff has held the following jobs: convenience store cashier, fast food service cashier, and front desk clerk. [*Doc. 14-8* at 4]. Plaintiff alleges that she is unable to work because of: "Chronic heart failure/tire easily/shortness

[of] breath/hpb/fatigue/hands get numb." *Id.* at 3.  Plaintiff's medical records include: a Physical Residual Functional Capacity Assessment by David P. Green, M.D., dated June 22, 2009 (*Doc. 14-14* at 2-9); a Psychiatric Review Technique by Ralph Robinowitz, Ph.D., dated June 10, 2010 (*id.* at 48-61); and a Case Analysis by Michael Finnegan, M.D., dated July 22, 2010 (*id.* at 62).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged disability onset date of April 25, 2007. [*Doc. 14-3* at 17].  At step two, the ALJ found that Plaintiff has the following severe medically determinable impairments: "hypertension, history of heart failure, lumbar degenerative disc disease, and obesity."  *Id.*  At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  *Id.* at 18.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work, but "is limited to occasional stooping, crouching, kneeling, and crawling; no climbing of ladders, ropes or scaffolds; avoid environments that are hot, cold, or humid; and avoid environments with smoke, dust, or fumes."  *Id.*  In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment."  *Id.* at 20.  The ALJ gave significant weight to the opinion of the state agency physician "find[ing] it consistent with a preponderance of the evidence."  *Id.*  The ALJ noted

that, although Plaintiff "has been continuously followed by a cardiologist for the allegedly disabling impairment(s), that treatment has been essentially routine and/or conservative in nature and, as testified to by the medical expert, the medical evidence establishes [Plaintiff's] heart is improved and stable with a normal recent ejection fraction." *Id.*  The ALJ also noted that Plaintiff works as a volunteer receptionist, and has done so "for quite some time," which the ALJ found "strongly suggests" that her impairments would not currently prevent her from working. *Id.*  At step four, the ALJ found that Plaintiff has no past relevant work, so the ALJ proceeded to the fifth step.  *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was born on June 18, 1977, so she was 29 years old at the time of her alleged disability onset date, which is defined as a younger individual between the ages of 18-49.  *Id.* at 21.  The ALJ noted that Plaintiff has at least a high school education, and is able to communicate in English.  *Id.*  The ALJ stated that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."  *Id.* (citing Soc. Sec. Rep. 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).  The ALJ found that, considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.  [*Doc. 14-3* at 21].  The ALJ stated that he asked the VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]" (*id.*), and the VE testified that such an individual would be able to perform the following requirements of representative occupations: mail clerk, garment folder, and shipping

and receiving clerk (*id.* at 21-22).  The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles."  *Id.* at 22.  The ALJ concluded that "[Plaintiff] is capable of making a successful adjustment to work that exists in significant numbers in the national economy."  *Id.*  The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act.  *Id.*

## V.   Analysis

Plaintiff makes the following arguments in her motion to reverse or remand: (1) the ALJ erred at step three by failing to conduct an analysis of whether Plaintiff's condition meets or equals Listing 4.02 for cardiovascular impairments (*Doc. 24* at 13-15) and by failing to explain how he considered the impairment of obesity in his listing analysis (*id.* at 15); (2) the ALJ's RFC assessment of "light work" is in error because it does not take into account Plaintiff's standing and walking limitations (*id.* at 16-19) and limitations related to hand numbness and tingling (*id.* at 19-20), as well as other RFC errors (*id.* at 20-22); and (3) the ALJ's credibility assessment is unsupported by substantial evidence and is legally erroneous (*id.* at 22-24).  In response, Defendant contends that substantial evidence supports the ALJ's step three finding, RFC assessment, and credibility finding.  [*Doc. 29* at 4-11].

### A.   The ALJ's Step Three Finding

#### *1.   Listing 4.02*

Plaintiff first contends that the ALJ's analysis at step three is incomplete and contrary to the law because the ALJ did not consider whether Plaintiff's condition meets or equals Listing 4.02.  [*Doc. 24* at 13-15].  Plaintiff states that her condition fits within this listing

because: (1) she presented evidence of systolic failure, shown by an ejection fraction of 30% or less, during the time period between April 2007 and September 2009; (2) she showed that her symptoms seriously limited her ability to independently initiate, sustain, or complete activities of daily living; and (3) the ALJ should have ordered an exercise test or should have at least considered whether Plaintiff's condition equaled the listing despite the absence of this evidence. *Id.* Defendant, however, contends that Plaintiff's evidence of systolic failure relates to the time period of Plaintiff's pregnancy complications, so the evidence cannot be used to support her claim that she meets Listing 4.02 because it was not during a period of stability. [*Doc. 29* at 5-6]. Defendant also contends that her symptoms do not meet this listing. *Id.* at 6-7.

At step three, the ALJ must determine whether Plaintiff's impairments meet or equal one of the listed impairments, which are impairments that are considered by the Commissioner to be so severe that they would preclude gainful employment. *See Clifton v. Chater*, 79 F.3d. 1007, 1009 (10th Cir. 1996). The ALJ's finding at this step should discuss the evidence and explain why the ALJ found that Plaintiff was not disabled at that step. *Id.* Although "[t]he record must demonstrate that the ALJ considered all of the evidence . . . an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1009-10.

Here, Plaintiff contends that she meets Listing 4.02(A)(1) and (B)(1), which requires:

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

>   A. Medically documented presence of one of the following:
>
>   1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
>   2. . . . ;
>
>   AND
>
>   B. Resulting in one of the following:
>
>   1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; . . . .

20 C.F.R., Pt. 404, Subpt. P., App. 1. In his decision, the ALJ stated that he "carefully considered listing 1.04 (Disorders of the Spine), listings in 4.00 (Cardiovascular System), obesity, and all the other listings and [is] convinced that [Plaintiff's] impairments are not attended with the specific signs and findings necessary to meet or equal any listed impairment." [*Doc. 14-3* at 18].

The Court finds that the ALJ's failure to evaluate whether Plaintiff met Listing 4.02 is in error because it leaves the Court with no record as to why the ALJ found the evidence regarding Plaintiff's heart failure insufficient to satisfy this listing. *See Clifton*, 79 F.3d at 1009 (holding that the ALJ's failure to discuss the evidence or his reasons for determining that the claimant was not disabled at step three was in error because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's] impairments did not meet or equal any Listed

Impairment, and whether he applied the correct legal standards to arrive at that conclusion"); *see also Dye v. Barnhart*, No. 05-5182, 180 Fed. Appx. 27, 29, 2006 WL 1230690 (10th Cir. May 9, 2006) (unpublished) (holding that the ALJ's discussion of the claimant's cardiac impairment was too conclusory and, therefore, beyond meaningful judicial review because it was "limited to a one sentence conclusion without any discussion of the medical evidence").

Defendant contends that the ALJ did not err in failing to discuss Listing 4.02 because evidence that Plaintiff met 4.02(A)(1) relates to the time of Plaintiff's pregnancy complications, and Plaintiff's ejection fractions improved after her hospital stay. [*Doc. 29* at 5-6]. This explanation of why Plaintiff may not meet Listing 4.02 was not made by the ALJ, and Defendant's attempt to supply the ALJ's reasoning for his findings is an impermissible *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted). In addition, Defendant fails to cite to any authority that provides that ejection fraction readings made during the time of pregnancy complications are not "during a period of stability (not during an episode of acute heart failure)" (Listing 4.02(A)(1)), such that they would not constitute systolic failure under Listing 4.02(A)(1). Moreover, even if the ejection fraction readings from the time period during Plaintiff's pregnancy do not constitute systolic failure during a time of stability under 4.02(A)(1), Plaintiff's ejection fraction readings continued to be at or just slightly above 30% for two years after her pregnancy. *See* [*Doc. 14-12* at 3, 20] (ejection fraction of 25-30% on April 27, 2007, two days after delivery of

baby); *id.* at 17 (ejection fraction of 30-35% on March 13, 2009); [*Doc. 14-13* at 19] (ejection fraction of 30-35% on April 6, 2009); and *id.* at 22 (ejection fraction of 30-35% on May 28, 2009). It appears from the record that it was not until November 18, 2009 that Plaintiff's ejection fraction was recorded above 50%. *See* [*Doc. 14-14* at 42-43]. These readings show that Plaintiff may have met or equaled Listing 4.02(A)(1) from April 27, 2007 to November 18, 2009. Defendant's contentions (*Doc. 29* at 7) that these readings do not meet the criteria for Listing 4.02 because the ME who testified at the July 2011 administrative hearing stated that these ejection fractions were "very good" and that, on June 3, 2010, a doctor found that Plaintiff's hypertension was well-controlled and Plaintiff showed no evidence of heart failure, are, again, impermissible *post hoc* rationalizations under *Robinson*, *supra*, and do not contradict Plaintiff's contention that she met § 4.02(A)(1) between April 2007 and November 2009.

Defendant also contends that Plaintiff does not meet the criteria for Listing 4.02(B)(1) because the ME opined that Plaintiff did not meet or equal any of the cardiac listings for congestive heart failure, Plaintiff did not seek regular treatment for peripartum cardiomyopathy, and Plaintiff did not regularly take her medications. [*Doc. 29* at 7-8]. This discussion, however, was not made by the ALJ in his decision, and Defendant cannot supply the reasoning for the ALJ's decision. With regard to the requirement under 4.02(B)(1) that a medical consultant must have concluded that the performance of an exercise test would present a significant risk to Plaintiff, the Court finds that the ALJ erred in failing to either order the test for Plaintiff, pursuant to 4.00(C)(6)(a)(1) (explaining that the Commissioner will consider purchasing an exercise test when "[t]here is a question whether [the claimant's] cardiovascular impairment meets or medically

equals the severity of one of the listings"), or at least in failing to discuss whether he thought there was enough evidence in the record to order the test. To the extent Defendant is arguing that the ALJ's failure to discuss his findings regarding Listing 4.02 was harmless, the Court rejects this contention because there are no confirmed or unchallenged findings made elsewhere in the ALJ's decision that confirms the ALJ's step-three decision. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (finding that the deficiencies in the ALJ's step three reasoning was harmless because "the ALJ's confirmed findings at steps four and five of his analysis, coupled with indisputable aspects of the medical record, conclusively preclude [C]laimant's qualification under the listings at step three," and "[n]o reasonable factfinder could conclude otherwise"). To the contrary, Plaintiff made numerous reports of symptoms that seriously limited her ability to independently initiate, sustain, or complete activities of daily living (*see, e.g., Doc. 14-3* at 36-39, *Doc. 14-12* at 9, *Doc. 14-13* at 22, and *Doc. 14-14* at 38), which at the least brings into question whether Plaintiff meets the 4.02(B)(1) criteria. For these reasons, the Court finds that the ALJ's failure to discuss the evidence or his reasons for finding that Plaintiff does not meet or equal Listing 4.02 at least between April 2007 and November 2009 is in error because it leaves the Court unable to assess the ALJ's conclusion, in violation of the holding of *Clifton*.

### 2. *Obesity Consideration*

Next, Plaintiff contends that the ALJ also erred at step three by failing to explain how he analyzed the impairment of obesity. [*Doc. 24* at 15]. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the entire sequential evaluation process. *See* SSR 02-1p, 2000 WL 628049 at *1. With regard to cardiovascular impairments, the Listings of

Impairments explains that "[o]besity is a medically determinable impairment that is often associated with disorders of the cardiovascular system," and that "[d]isturbance of [the cardiovascular] system can be a major cause of disability if [a claimant] has obesity." Listing 4.00(I)(1). Therefore, the ALJ "must consider any additional and cumulative effects of obesity when [the ALJ] determine[s] whether [a claimant] ha[s] a severe cardiovascular impairment or a listing-level cardiovascular impairment (or a combination of impairments that medically equals the severity of a listed impairment)." *Id.*

Here, the ALJ stated that he reviewed SSR 02-1p, and "conclude[d] that [Plaintiff's] obesity, either alone or in combination with his [sic] other conditions does not meet or equal a listing level impairment." [*Doc. 14-3* at 18]. While Defendant contends that the ALJ's finding is not in error because Plaintiff's cardiologists did not assess any limitations based on Plaintiff's obesity (*Doc. 29* at 8), this is an impermissible *post hoc* rationalization under *Robinson* and cannot be used to supply the reasons for the ALJ's decision. The Court finds that this case is distinguishable from the case cited by Defendant, *Fagan v. Astrue*, No. 06-6261, 231 Fed. Appx. 835, 837, 2007 WL 1895596 (10th Cir. July 3, 2007) (unpublished), because, in that case, the ALJ discussed the evidence and why he found the claimant not disabled at step three, specifically discussing how the claimant's impairments were impacted by her weight and noting that there was only one functional limitation imposed by a treating physician. *Id.* at 837 n.3. In contrast, here, the ALJ's statement regarding Plaintiff's obesity at his step-three determination is conclusory and does not provide a discussion of any additional or cumulative effects of Plaintiff's obesity on her cardiovascular impairments. The Court, therefore, finds that the ALJ erred in his

discussion of Plaintiff's obesity at step three. *See also DeWitt v. Astrue*, No. 09-3250, 381 Fed. Appx. 782, 785, 2010 WL 2181759 (10th Cir. June 2, 2010) (unpublished) (finding that the ALJ erred in his consideration of the claimant's obesity under SSR 02-1p because "there is nothing in the decision indicating how or whether [the claimant's] obesity influenced the ALJ in setting [the RFC] restrictions," and that "it appears that the ALJ's RFC assessment was based on assumptions about the severity or functional effects of [the claimant's] obesity combined with [her] other impairments -- a process forbidden by SSR 02-01p") (internal brackets and quotation marks omitted); *see also Baker v. Barnhart*, No. 03-7041, 84 Fed Appx. 10, 14, 2003 WL 22905238 (10th Cir. Dec. 10, 2003) (unpublished) (noting that the ruling in SSR 02-1p on obesity applies at all steps of the evaluation sequence).

### B.  The ALJ's RFC Assessment

#### *1.  Standing and Walking*

Next, Plaintiff contends that the ALJ's RFC assessment is in error because it does not take into account Plaintiff's standing and walking limitations.  [*Doc. 24* at 16-19].   Plaintiff contends that the ALJ erred in relying on the ME's testimony regarding Plaintiff's abilities to stand and walk, and failed to explain why he did not rely on Plaintiff's statements that she has trouble walking.  [*Doc. 24* at 17-18] (citing *Doc. 14-12* at 9, where Plaintiff told Dr. Hass on December 1, 2008 that she had significant dyspnea[1] on exertion and could only walk about 1/2 block before becoming short of breath; *Doc. 14-13* at 22, where Plaintiff told CNP Hawkins on May 28, 2009 that on a bad day she can only walk a few feet before becoming short of breath, but

---

[1] "Exertional dyspnea" is defined as: "excessive shortness of breath after exercise."   Stedman's Medical Dictionary (27th ed., Lippincott Williams & Wilkins 2000) at 556.

on a good day she can walk 50-60 feet; and *Doc. 14-14* at 38, where Plaintiff told Dr. Boulware on September 22, 2009 that she has chest discomfort, dyspnea with walking, palpitations, dizziness and fatigue). In response, Defendant states that the ALJ's RFC determination was not in error because the ALJ properly considered the reports of Dr. Hass and Dr. Boulware, which support the ALJ's RFC determination. [*Doc. 29* at 9-10] (citing, *e.g.*, *Doc. 14-12* at 10 and *Doc. 14-14* at 40).

A claimant's RFC is based on how the claimant's physical and mental limitations affect the claimant's ability to work, and is "the most [a claimant] can still do despite [those] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also* SSR 96-8p, 1996 WL 374184 at *2 ("RFC is what an individual can still do despite his or her limitations."). The ALJ must base the RFC assessment on all of the relevant evidence in the record, such as medical history, laboratory findings, effects of treatment and symptoms, including pain, reports of daily activities, lay evidence, recorded observations, medical source statements, evidence from attempts to work, need for a structured living environment, and work evaluations, if any. SSR 96-8p at *5. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved," and the RFC assessment must always consider and address medical source opinions. *Id.*

Here, the ALJ found that Plaintiff has the RFC to perform light work, but "is limited to occasional stooping, crouching, kneeling, and crawling; no climbing of ladders, ropes or scaffolds; avoid environments that are hot, cold, or humid; and avoid environments with smoke, dust, or

15

fumes." [*Doc. 14-3* at 18]. "Light work" requires standing or walking, off and on, for approximately 6 hours out of an 8-hour workday. *See* SSR 83-10, 1983 WL 31251 at *6, and 20 C.F.R. §§ 404.1567(b), 416.967(b) ("[A] job is in [the light work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.") The ALJ's RFC determination does not provide for any limitations on Plaintiff's ability to perform the standing and walking requirements of light work. Nevertheless, the Court finds that the ALJ's RFC determination is not in error with regard to Plaintiff's standing and walking because the ALJ discusses why he rejected the evidence in the record that may be inconsistent with the RFC determination. *See* [*Doc. 14-13* at 19]. While Plaintiff contends that the ALJ failed to discuss Dr. Hass' notation that Plaintiff has significant dyspnea on exertion and could only walk about 1/2 block before becoming short of breath (*see Doc. 24* at 17, citing *Doc. 14-12* at 9), Dr. Hass did not make this finding -- instead he noted that this was Plaintiff's report to him. Moreover, the ALJ discussed Plaintiff's statements regarding her shortness of breath, troubles walking, and fatigue. *See* [*Doc. 14-13* at 19] (discussing both Plaintiff's testimony and statements made to CNP Garman in September 2009 regarding these limitations, citing to *Doc. 14-14* at 38-41). The ALJ explained that, while in September 2009 Plaintiff reported shortness of breath after walking, fatigue, and muscle/joint pain, in June 2010, Plaintiff denied fatigue, muscle/joint pain, and shortness of breath, and Dr. Boulware opined that Plaintiff had well-controlled hypertension and no evidence of heart failure. [*Doc. 14-3* at 19] (citing *Doc. 14-14* at 26-28). The Court, therefore, finds no error in the ALJ's RFC determination regarding Plaintiff's abilities to stand and walk.

### *2. Numbness and Tingling*

Plaintiff next contends that the ALJ's RFC assessment is in error because it does not take into account Plaintiff's limitations related to hand numbness and tingling. [*Doc. 24* at 19-20] (citing *Doc. 14-3* at 41-42, *Doc. 14-8* at 32, *Doc. 14-9* at 28 and *Doc. 14-13* at 22, Plaintiff's testimony and statements about her hands getting numb and tingling). In response, Defendant states that the ALJ's RFC determination was not in error because neither Dr. Hass nor Dr. Boulware found that Plaintiff had edema in her extremities, and Dr. Boulware found that Plaintiff's motor and sensory function were within normal limits. [*Doc. 29* at 9-10] (citing *Doc. 14-12* at 10 and *Doc. 14-14* at 40).

The ALJ failed to account for any limitations in his RFC determination with regard to Plaintiff's reports of numbness and tingling, except for limiting Plaintiff's RFC to "no climbing of ladders, ropes or scaffolds." *See* [*Doc. 14-3* at 18]. The ALJ's failure to account for these limitations while also failing to discuss any of Plaintiff's reports regarding numbness or tingling is in error. *See* SSR 83-14, 1983 WL 31254 at *4 (explaining that many unskilled light jobs "require gross use of the hands to grasp, hold and turn objects," and that "[a]ny limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable for light work"). This is especially so when it appears that the VE testified that problems with hand numbness would affect Plaintiff's ability to do the jobs reported by the VE that Plaintiff would be able to perform. *See* [*Doc. 14-3* at 46]. Defendant's attempt to supply the reasoning for the ALJ's decision is, again, an impermissible *post hoc* rationalization. The Court, therefore, finds

that the ALJ's RFC determination is not in compliance with SSR 96-8p with regard to Plaintiff's reports of hand numbness and tingling because the ALJ did not explain how he considered and resolved these reports. *See* SSR 96-8p at *7. Accordingly, on remand, if necessary after revisiting the step-three analysis, the Commissioner shall provide an evaluation of Plaintiff's reports of hand numbness and tingling in accordance with SSR 96-8p and other applicable law.

### B. Plaintiff's Remaining Claims

Plaintiff also contends that the ALJ erred in his RFC determination regarding Plaintiff's activities as a volunteer receptionist and by failing to address Plaintiff's headaches (*Doc. 24* at 20-22), and that the ALJ's credibility assessment is unsupported by substantial evidence and is legally erroneous (*id.* at 22-24). Because the Court has found that this case should be remanded so that the Commissioner can reconsider the ALJ's step-three findings and RFC determination, the Court finds that it is unnecessary to reach Plaintiff's remaining claims because they may be affected by the ALJ's findings on remand. *See Robinson*, 366 F.3d at 1085 (declining to reach the claimant's step-five claims because they may be affected by the ALJ's resolution of the case on remand) and *Lopez v. Astrue*, No. 09-2187, 371 Fed. Appx. 887, 889 and 892 n.6, 2010 WL 1172610 (10th Cir. March 29, 2010) (unpublished) (after finding that the ALJ erred by failing to articulate what weight she gave to the treating physicians' opinions, the Tenth Circuit declined to reach claims regarding the ALJ's reliance on the VE's testimony, the ALJ's credibility assessment, and the claimant's subjective complaints of pain, because those issues may be affected by the ALJ's treatment of the case on remand) (citing *Robinson*, 366 F.3d at 1085).

## VI.   Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider Plaintiff's physical and mental limitations as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, Plaintiff's *Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum (Doc. 24)* is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes a. Martinez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**